**HELMSMAN MANAGEMENT SERVICES, INC., Plaintiff–Appellant,**

v.

**COLORADO DEPARTMENT OF LABOR AND EMPLOYMENT; and Vickie L. Armstrong, in her official capacity as Executive Director of the Colorado Department of Labor and Employment, Defendants–Appellees.**

No. 00CA1917.

Colorado Court of Appeals, Div. A.

Dec. 7, 2000.*

As Modified on Denial of Rehearing Jan. 18, 2001**.

Certiorari Denied Sept. 4, 2001.

---

* Opinion previously announced as "Not Selected for Publication" on Dec. 7, 2000, is now selected for publication.

** Roy, J., would Grant.

Gibson, Dunn & Crutcher, LLP, Gregory J. Kerwin, J. Gregory Whitehair, Leslie M. Kelly, Denver, for Plaintiff–Appellant.

Ken Salazar, Attorney General, John Baird, Assistant Attorney General, Mark Gerganoff, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Berg Simpson Eldredge Hersh & Jardine, P.C., Douglas J. Kotarek, Englewood, Colorado, for Amicus Curiae Colorado Self–Insurers Association.

Gordon & MacDonald, P.C., William J. MacDonald, Denver, Colorado, for Amicus Curiae Colorado AFL–CIO.

Opinion by Judge CASEBOLT.

In this action for recovery on the surety bond of a self-insured employer under the workers' compensation act, plaintiff, Helmsman Management Services, Inc. (Helmsman), appeals the judgment dismissing its complaint against defendants, the Colorado Department of Labor and Employment and its executive director, Vickie L. Armstrong, in her official capacity. We affirm.

The following facts are undisputed. In 1993, defendants issued a self-insurance permit to N.W. Transport Service, Inc. (NationsWay), under § 8–44–201, C.R.S.2000, allowing NationsWay to self-insure its liability for workers' compensation. NationsWay selected Helmsman to be its workers' compensation claims administrator under its self-insurance plan. NationsWay contracted with Liberty Mutual Insurance Company (Liberty) to provide the surety bond required by defendants. The bond named the executive director of the department as the obligee and was to be used to cover all of NationsWay's workers' compensation liabilities in the event of default by NationsWay.

On May 20, 1999, NationsWay defaulted on its workers' compensation liabilities. Two days later, upon the expiration of a ninety-day notice previously given, Liberty cancelled the bond. As a result, on May 24, 1999, defendants revoked NationsWay's self-insured status for failure to maintain adequate security and claimed the bond to pay all outstanding workers' compensation liabilities of NationsWay. The revocation order also required Liberty to remain liable for any claims based upon accidents or injuries to NationsWay's employees occurring within the term of the bond and obligated it to pay claims as provided under the bond terms. Defendants also ordered Helmsman to continue as claims administrator for all claims based upon accidents or injuries occurring within the term of the bond. Helmsman consented to the continuation.

Meanwhile, between January 1999 and May 1999, Helmsman had paid approximately $1.3 million in workers' compensation benefits to employee-claimants of NationsWay, expecting that NationsWay would reimburse it for such advanced sums, as it had in the past, through a bank account. However, NationsWay did not reimburse Helmsman; instead, it filed for bankruptcy on May 20, 1999.

Helmsman thereafter sought to recover the amounts it had paid to claimants from the surety bond NationsWay had posted. Defendants denied the request. Helmsman then filed a complaint in the trial court seeking a declaratory judgment and judicial re-

view of the decision of the executive director. Defendants filed a motion to dismiss with affidavits and exhibits, and Helmsman filed a cross-motion for summary judgment. The trial court granted the motion to dismiss, and this appeal followed.

## I.

Helmsman contends the trial court erred in dismissing its complaint, because it is a third-party beneficiary of the surety bond entitled to recover payments it made on behalf of NationsWay before the default. We disagree.

Defendants' motion to dismiss was based on C.R.C.P. 12(b)(5). However, the motion and the response and cross-motion for summary judgment included affidavits and attachments. Because the trial court did not expressly exclude the attachments to the pleadings, we assume for purposes of this appeal that it considered matters outside the pleadings and treated the motion as one for summary judgment. *See* C.R.C.P. 12(b); *Dunlap v. Colorado Springs Cablevision, Inc.*, 829 P.2d 1286 (Colo.1992).

■ Summary judgment is appropriate only when the pleadings and supporting documents demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We review an order granting a motion for summary judgment *de novo. Vail/Arrowhead, Inc. v. District Court*, 954 P.2d 608 (Colo.1998).

■ A surety bond is a written contract guaranteeing performance of an obligation by another and should be interpreted according to the standards that govern the construction of contracts in general. Hence, a court must interpret the language of the bond in harmony with the intent of the parties, which generally is to be determined from the language of the instrument itself. *Edmonds v. Western Surety Co.*, 962 P.2d 323 (Colo.App.1998). In addition to that language, a court must consider other instruments to which the bond refers. *Western Surety Co. v. Smith*, 914 P.2d 451 (Colo.App.1995).

■ A third party who is not a party to an agreement may enforce one or more of the obligations created by that agreement if that third party is intended by the contracting parties to be a direct beneficiary. Such intent need not be expressed in the agreement itself, but it may be evidenced by the terms of the agreement, the surrounding circumstances, or both. *E.B. Roberts Construction Co. v. Concrete Contractors, Inc.*, 704 P.2d 859 (Colo.1985).

■ Further, it is not necessary that the third party be specifically referred to in the agreement. It is sufficient if the claimant is a member of the limited class that was intended to benefit from the contract. *Smith v. TCI Communications, Inc.*, 981 P.2d 690 (Colo.App.1999); *see also* Restatement (Third) of Suretyship and Guaranty § 69 (1995) (when, pursuant to the underlying obligation, a duty of the principal obligor to a third person is created and the secondary obligor promises the obligee to fulfill the principal obligor's duty to the third person, the third person is an intended beneficiary of the secondary obligor's promise).

■ In cases involving surety bonds, intent may also be gleaned from governing statutes and regulations. *See Edmonds v. Western Surety Co., supra; Gloucester City Board of Education v. American Arbitration Ass'n*, 333 N.J.Super. 511, 755 A.2d 1256 (2000) (when a surety bond is issued to satisfy the requirements of a statute, the bond will be construed in conformity with the legislative mandate); Restatement (Third) of Suretyship and Guaranty §§ 14 & 71 (1995).

Section 8–44–201, C.R.S.2000, provides that the executive director may grant permission to an employer to be its own insurance carrier for the payment of the compensation and benefits required by the workers' compensation act. The executive director is authorized to prescribe surety bonds to provide security requirements.

Under 7 Code Colo. Reg. 1101–4, part III(d)(2), a surety bond must be issued in a form prescribed by the executive director and must name the executive director as beneficiary-obligee. That regulation further provides:

Upon discontinuance of self-insured status, for any reason, the executive director shall claim such security of that permit holder as reserves for all outstanding workers'

compensation liabilities.... In all forms of security such proceeds may be used in any manner to include payment of administrative or other costs necessitated in discharging any workers' compensation liability on the part of the employer under the act.

Under the terms of the surety bond, in the event the self-insured employer (the principal) fails to fulfill its obligations to its employees, the surety (the secondary obligor) must perform the obligation set forth in the bond. *See General Insurance Co. v. City of Colorado Springs,* 638 P.2d 752 (Colo.1981).

Here, the bond provided, in pertinent part:

Know all men by these presents: That N.W. Transport Service, Inc., ... as Principal, and Liberty Mutual Insurance Company ... as Surety, are held and firmly bound unto the Executive Director, as Obligee, for the use and benefit of all claimants entitled to benefits under the Workers' Compensation Act in respect to the employees of said Principal, in the sum of [$5.8 million]....

[T]he Principal hereby agrees as follows:

To pay compensation according to the terms and provisions of said Act to its employees, or to their dependents when death ensues, and to furnish medical aid ... and to pay funeral expenses ... and to pay, perform and discharge any lawful award entered in regard to such injured or killed employees, or dependents of deceased employees, and to cover all administrative and other costs incidental to the payment of said compensation benefits under the Colorado Workers' Compensation Act....

And it is further agreed, that the proceeds of this bond can be used for no other purpose than to pay workers' compensation on behalf of claimants subject to [the Act].

. . . .

And it is further agreed that the Surety will become liable for workers' compensation obligations of the Principal on the date that workers' compensation benefits are suspended and the Surety will begin payment within thirty days after receipt of written notification....

And it is further agreed that the liability of the Surety hereunder is limited to the payment of such compensation benefits for and on account of any accident or injury occurring to the employees of said Principal within the term of this bond ... and it is further understood and agreed that the said Surety shall be liable for the full penal sum ... for the default of the Principal in fully discharging any liability on the part of the Principal accruing hereunder.

### A.

■ Helmsman contends that the benefits it paid to claimants were provided during the term of the bond, were for the benefit and on behalf of claimants, and were for and on account of an accident or injury occurring to employees of NationsWay. Hence, it claims it is an intended third-party beneficiary of the bond, entitled to recover for payments it made before the default of NationsWay. We disagree.

The fourth quoted paragraph of the bond specifically states that the surety will become liable for workers' compensation obligations of the principal on the date that workers' compensation benefits are suspended. Hence, the bond is "forward-looking" from the date of default, providing for liability after suspension of benefits. Essentially, liability attaches for unpaid sums due and for benefits accruing *after* the default of the principal.

Here, Helmsman acknowledges that such date was May 20, 1999. It is undisputed that all of the payments for which Helmsman seeks reimbursement were made before that date. Thus, the bond does not provide payment for such sums because its proceeds pay for workers' compensation obligations still unpaid as of the default date or that accrue after the default of NationsWay. *See St. Paul Fire & Marine Insurance Co. v. Industrial Commission,* 30 Ohio St.3d 17, 506 N.E.2d 202 (1987) (surety liable for compensation and benefits not paid by its principal).

That fourth quoted paragraph also requires the surety to become liable for "workers' compensation obligations" of the principal on the date of default. NationsWay's

obligation to reimburse Helmsman is not a workers' compensation obligation because Helmsman is not entitled to claim workers' compensation benefits from NationsWay. Only employees may make such claims, as it is they and their dependents to whom benefits inure under the workers' compensation act.

We recognize that the service agreement between Helmsman and NationsWay obligates the latter to reimburse Helmsman for such advances. But, even though Helmsman paid money to or on behalf of such workers' compensation claimants, that does not mean that *it* in turn has a workers' compensation claim against NationsWay for these antecedent payments. Instead, Helmsman's claim is that of an ordinary creditor.

Other provisions of the bond militate against Helmsman's contention as well. In the first quoted paragraph, the bond names the executive director as the obligee, for the use and benefit of claimants entitled to benefits under the workers' compensation act. This provision thus designates such claimants as the intended beneficiaries of the bond. Helmsman is not a workers' compensation claimant within the meaning of this provision; rather, it is a third-party administrator that provided benefits to claimants.

This interpretation is also consistent with the special relationship between sureties and obligees. When an obligee requests that a principal obtain a commercial surety bond to guarantee the principal's performance, the obligee is essentially insuring itself from the potentially catastrophic losses that would result in the event the principal defaults on its original obligation. When the principal actually defaults, the commercial surety must assume or correct any flaws in performance pursuant to the terms of the original contract, thereby eliminating the obligee's risk of loss in the venture. Essentially, the core purpose of the suretyship agreement is to insulate the obligee from the risk of default. *Transamerica Premier Insurance Co. v. Brighton School District 27J*, 940 P.2d 348 (Colo.1997).

Here, construing the bond as "forward-looking" from the date of default is consistent with these principles. If we were to interpret the bond in Helmsman's favor and require its reimbursement from bond proceeds, it is undisputed that the remaining bond proceeds would probably be insufficient to pay the workers' compensation benefits accruing henceforth. Under such circumstances, payments to claimants would have to be made from an immediate payment fund and a guaranty fund legislatively created under § 8–44–206, C.R.S.2000, which could entail delay in receipt of such benefits and possible exhaustion of the immediate payment fund. This would be inconsistent with the bond's purpose of insulating the workers' compensation claimants from the risk attendant to default.

In sum, we hold that the terms of the bond do not allow recovery from its proceeds for payments Helmsman made before the default of NationsWay.

#### B.

Contrary to Helmsman's contentions, this interpretation is not in conflict with the applicable regulations quoted above. As noted, under 7 Code Colo. Reg. 1101–4, part III(d)(2), the executive director claims the security "as reserves for all outstanding workers' compensation liabilities," and may use the proceeds of the bond "in any manner to include payment of administrative or other costs necessitated in discharging any workers' compensation liability on the part of the employer." Because Helmsman is owed a simple debt, not a workers' compensation liability, and because the bond does not cover antecedent payments, its payments before default do not qualify for reimbursement. Any workers' compensation claims already paid by Helmsman on behalf of NationsWay prior to Liberty's liability arising under the bond were no longer "outstanding workers' compensation liabilities." Those arising after default, because they were unpaid by NationsWay or anyone else, would qualify as such.

For the same reasons, the second quoted paragraph of the bond that requires the principal to pay all administrative and other costs incidental to the payment of said compensation benefits as part of its underlying obligation, does not dictate a contrary result. Payment of such costs, as the payment of benefits, occurs from the date of default forward.

### C.

Helmsman contends that the course of dealing between itself and the defendants subsequent to default reveals it to be an intended beneficiary for its antecedent payments. Helmsman correctly notes that, in the May 24, 1999, order revoking Nations-Way's status as a self-insurer, defendants ordered it to continue as claims administrator for all claims against NationsWay based upon accidents or injuries occurring within the effective duration of the bond. Further, Helmsman correctly notes that defendants are currently reimbursing it with bond proceeds for claims administered following NationsWay's default.

However, such actions are entirely consistent with our interpretation that the bond covers workers' compensation liabilities and associated costs accruing and unpaid upon default, but not those already paid before default.

### D.

We reject Helmsman's contention that it is entitled to payment as a third-party beneficiary for its antecedent payments because to find otherwise would be grossly unfair and would have a detrimental effect on the workers' compensation system.

■ A third-party claims administrator's role is derived from its contract with a self-insured employer, but it is also based on statutes and regulations as part of the benefit-delivery process. The regulations under the workers' compensation act specifically contemplate the use of claims administration services as an important part of the scheme for the delivery of benefits, and those regulations govern claims administrators, as well as employers, because of the concern that claimants receive effective and efficient claims processing. For these reasons, such administrators owe a duty of good faith and fair dealing directly to claimants and can be held liable for a breach of that duty. *See Scott Wetzel Services, Inc. v. Johnson,* 821 P.2d 804 (Colo.1991).

■ Nevertheless, this statutory and regulatory scheme does not mandate a finding that third-party claims administrators are intended beneficiaries of surety bonds for pre-default payments made on behalf of self-insured employers. Such administrators are not liable themselves for workers' compensation payments. Rather, it is the principal, *i.e.,* the self-insurer, who is liable. Claims administrators are liable only for their *own* acts or omissions in investigating, administering, and paying claims. *See Scott Wetzel Services, Inc. v. Johnson, supra.*

Nor are we persuaded that precluding Helmsman's recovery here would have a devastating effect on the workers' compensation benefits process because administrators will likely stop advancing these payments. Nothing prevents a third-party administrator from requiring prompt reimbursement of advanced expenses, nor from requiring sufficient advance deposits from self-insured employers in secured accounts so that payments are made with funds of the principal, rather than the agent.

Accordingly, there are no genuine issues of material fact, and defendants are entitled to judgment as a matter of law. Therefore, the trial court did not err in granting summary judgment in favor of defendants.

### II.

In view of this disposition, we need not address Helmsman's remaining contentions. Furthermore, the request for injunctive relief pending appeal is necessarily rendered moot by this disposition. Because we determine that the appeal by Helmsman is far from frivolous or groundless, we deny defendants' request for attorney fees. *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993).

The judgment is affirmed.

Judge RULAND and Judge ROY concur.