# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1547

_____

Spirtas Company, doing business as    *
Spirtas Wrecking Company, formerly   *
known as Arnold R. Spirtas Company;  *
Spirco Environmental, Inc., formerly   *
known as Spirco Services, Inc.; Spirtas  *
Industrial Services, Inc.; Service      *
Contractors, Inc.; Abatement Services,  *
Inc.; Arnold R. Spirtas; Sandra T.     *    Appeal from the United States
Spirtas; Joel A. Spirtas,              *    District Court for the Eastern
                             *    District of Missouri.
      Plaintiffs - Appellants,     *
                             *
    v.                        *
                             *
The Insurance Company of the State of  *
Pennsylvania,               *
                             *
      Defendant - Appellee.     *

_____

Submitted: December 14, 2007
Filed: February 3, 2009
_____

Before BYE, ARNOLD, and MELLOY, Circuit Judges.
_____

MELLOY, Circuit Judge.

Appellants are a collection of related individuals, demolition firms, and environmental remediation firms. Appellee, The Insurance Company of the State of

Pennsylvania ("ICSP"), is a provider of surety bonds. ICSP required Appellants to enter into two general indemnity agreements in favor of ICSP as a condition for ICSP to issue a surety bond guaranteeing that one of the appellants, Spirco Environmental, Inc. ("Spirco"), would perform a remediation contract. ICSP subsequently incurred attorney and expert witness fees defending a claim on the bond. Eventually, ICSP sought indemnification for these fees from Appellants in accordance with the general indemnity agreements. Appellants brought the present declaratory judgment action seeking a ruling that they were not liable for ICSP's fees. In ruling on two separate motions for summary judgment, the district court[1] held that ICSP was entitled to receive fees and expenses from Appellants and that the amount due was approximately $800,000 plus pre- and post-judgment interest. We affirm.

I. Background

In February 1997, Spirco, a Missouri-based contractor, entered into a remediation contract with a New Jersey property owner to conduct asbestos removal at a New Jersey property. Spirco was to receive about $2.8 million under the contract. In order to obtain the contract, the property owner required Spirco to post a surety bond, and Spirco sought a bond from ICSP. As a requirement for issuing the bond, ICSP demanded that Spirco and the other Appellants enter into two separate general indemnity agreements obligating Appellants to pay ICSP for "all loss and expense, including attorney fees, incurred by [ICSP] by reason of having executed any Bond." Appellants entered into the indemnity agreements, and ICSP issued the surety bond at issue in the present case in the amount of $2.8 million. The remediation contract between Spirco and the property owner contained an arbitration clause, and the contract for the bond between ICSP and Appellants expressly incorporated the remediation contract by reference.

---

[1]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri, sitting by consent of the parties in accordance with 28 U.S.C. § 636(c).

Throughout the course of the remediation, a third party inspected and approved Spirco's work, and the property owner made partial payments based on the third party's approval. When Spirco believed all work was complete, it demanded payment of the final $150,000 under the $2.8 million contract. The property owner had been holding this amount as retainage. The third-party inspector recommended that the property owner pay the final amount. The inspector also reported to the property owner that the site was clean and that Spirco had completed asbestos removal according to the scope of work as described in technical project specifications for the contract.

The property owner refused to pay the final $150,000, alleging that Spirco had not properly performed the remediation. The property owner asserted that Spirco failed to remove all asbestos and caused property damage by spreading asbestos to previously uncontaminated areas by using power-washing equipment without proper containment. Spirco disputed these allegations based on the third-party inspector's approval of Spirco's work. Spirco further asserted that any asbestos found by the property owner was not within the scope of Spirco's work, but rather, was asbestos other workers had dislodged after Spirco left the site. Spirco asserted specifically that the asbestos came from areas of the building that were not exposed during Spirco's work.

In July 1998, the property owner submitted a bond claim to ICSP demanding that ICSP pay for additional remediation services allegedly caused by Spirco's contamination of the site. ICSP refused to pay the claim.

In September 1998, Spirco initiated arbitration with the property owner in an attempt to obtain the final $150,000 contract amount. The property owner asserted a counterclaim against Spirco, seeking over $4 million based on lost rental income and additional remediation costs. The property owner sought to add ICSP to the arbitration, asserting a claim for over $4 million in compensatory damages. The

property owner also sought over $4 million in punitive damages, alleging a bad faith failure to pay the property owner's earlier bond claim.

Facing a claim that appeared to exceed Spirco's ability to pay and that, in fact, exceeded the bond limit, ICSP eventually elected to participate in the arbitration by hiring outside counsel and retaining a technical expert. Initially, ICSP resisted participating in the arbitration and argued the bond contained no provision requiring arbitration. The property owner, however, threatened to seek a federal court order compelling arbitration. The property owner noted in a letter to ICSP that the bond incorporated the remediation contract by reference and that the arbitration clause, therefore, applied to ICSP as held in Hoffman v. Deposit Co. of Maryland, 734 F. Supp. 192 (D.N.J. 1990). Eventually the property owner agreed to drop the claim for punitive damages and reduce its total demand to $2.8 million, the amount of the bond limits, plus interest, in exchange for ICSP's agreement to participate in the arbitration.

ICSP's counsel and expert attended the arbitration, which entailed forty-four days of proceedings spread over a period of months. ICSP's counsel and expert were present for most of these days, and ICSP's counsel participated actively on many days, examining and cross examining Spirco's witnesses and the property owner's witnesses. Although ICSP held several suretyship defenses,[2] the primary focus of the arbitration was not on ICSP's suretyship defenses until after the thirty-seventh day of proceedings.

Spirco was represented by its own counsel. During the course of arbitration, counsel for Spirco sent a letter to ICSP questioning ICSP's motives for participating in the arbitration and complaining about ICSP's participation. In the same letter,

---

[2]For example, ICSP argued overpayment by the property owner in that the property owner claimed to have incurred substantial additional remediation costs without consulting ICSP as required under the bond. ICSP also argued that the third-party inspector had improperly certified certain aspects of Spirco's work.

however, counsel for Spirco complained that ICSP was not mounting a sufficiently vigorous defense, suggested strategies for ICSP to employ, and demanded that ICSP mount an aggressive defense. ICSP responded by letter, offering to let Spirco assume sole defense of all claims contingent on Appellants posting the $2.8 million bond limit as collateral to ensure payment of the indemnification obligation in the event Appellants, or Appellants and ICSP, were to lose in the arbitration. Appellants did not accept ICSP's offer to let them assume the entire defense.

The parties eventually submitted the case to the arbitrators who found in favor of Spirco and ICSP and against the property owner. The arbitrators cited two rationales for finding in favor of ICSP. First, the arbitrators held, "the finding on the claim against Spirco is dispositive against [ICSP]." Second, the arbitrators found that the property owner had improperly contracted with a replacement remediation firm and commenced additional work without giving ICSP adequate opportunity to respond to the claim, as required under the bond. Accordingly, ICSP succeeded on its shared defense with Spirco as well as on a separate, suretyship defense. In reaching these ultimate conclusions, the arbitrators found that the property owner had permitted contractors working on ductwork, windows, and other items to enter the building after Spirco had left. The arbitrators found further that these contractors had exposed and spread previously unexposed asbestos that was not within the scope of work of Spirco's project.

Approximately two years after the arbitrators entered their award, ICSP submitted a claim to Appellants on the general indemnity agreements seeking reimbursement for approximately $800,000 in fees that ICSP had spent on the retained counsel and expert. Appellants refused to pay and eventually brought the present declaratory judgment action.[3] After discovery, the parties filed cross motions for

_____

[3]In addition, Spirco submitted a claim to its general casualty pollution insurer seeking a defense and coverage as to ICSP's claim for fees. The insurer provided a defense under a reservation of rights. The insurance claim led to separate litigation

-5-

summary judgment, and the district court interpreted the general indemnity agreements. The district court found that the general indemnity agreements required Appellants to pay ICSP's attorney and expert witness fees. Regarding the amount of fees owed to ICSP, the district court found that the indemnity agreements required ICSP to provide an itemized statement from an officer of ICSP swearing to the amount of fees and that the sworn statement would serve as prima facie evidence of the fee amount.[4] ICSP had not provided such a statement, so the district court denied summary judgment as to the determination of the fee amount. Subsequently, ICSP provided a statement as required by the indemnity agreements (along with other supporting documents beyond what the indemnity agreements required). On a renewed motion for summary judgment, the district court awarded ICSP the full amount of its fees plus interest. The district court rejected arguments by Appellants that ICSP incurred the fees in bad faith, that the fees were unreasonable, and that the delay in submitting the claim for fees caused prejudice and precluded payment.

On appeal, Appellants argue they should not be held liable for any of ICSP's attorney or expert witness fees. Appellants argue in the alternative that ICSP's attorney and expert witness fees were not reasonable, and therefore, even if we affirm the district court's judgment as to liability, a remittur or a remand for reconsideration of the fee award is necessary. Appellants no longer argue that ICSP incurred the attorney and expert witness fees in bad faith or that ICSP's delay in asserting the claim for indemnification resulted in prejudice that should preclude Appellants' duty to pay under the general indemnity agreements.

---

between Spirco and its insurer. That litigation resulted in an award against the insurer and a separate appeal that we address in a companion opinion also filed today.

[4]The indemnity agreements provided: "an itemized statement of loss and expense incurred by [ICSP], sworn to by an officer of [ICSP], shall be prima facie evidence of the fact and extent of liability of [Appellants] to [ICSP] in any claim or suit by [ICSP] against [Appellants]."

## II.  Discussion

### A.  Liability

Regarding the question of liability, Appellants argue that the remediation contract, as incorporated within the surety bond, required express consent from all Appellants before ICSP could join the arbitration or before the property owner could add ICSP and claims against ICSP to the arbitration.  Based on this argument, Appellants assert that ICSP was not a proper party to the arbitration and that we should not view ICSP as having incurred attorney and expert witness fees "by reason of having executed any Bond."  Appellants also argue that ICSP voluntarily participated in the arbitration and that this voluntary act broke the chain of causation connecting the fees to the execution of the bond.

The arguments surrounding Appellants' consent to ICSP's participation and the voluntariness of ICSP's participation in the arbitration are red herrings.  As an initial matter, it is not entirely clear that ICSP failed to obtain adequate consent because counsel for Spirco represented to ICSP that there was consent for ICSP's participation.  Regardless, the questions before us are not whether we should enforce an arbitration award or whether there was some infirmity with the underlying arbitral process.  If those were the questions we faced, it might be necessary to address in detail the issue of Appellants' consent for including ICSP and claims against ICSP in the arbitration.  The questions we face are: (1) whether ICSP incurred its attorney and expert witness fees "by reason of having executed any bond;" and (2) whether, based on the methods of proof set forth in the indemnity agreements and the Federal Rules of Civil Procedure, summary judgment was appropriate as to the amount of those fees.

We hold that the contract language "by reason of having executed any bond" is unambiguous and sets forth a simple cause-in-fact or "but-for" causation test.  See, e.g., Pacific Ins. Co. v. Eaton Vance Mgmt., 369 F.3d 584, 589 (1st Cir. 2004) ("[W]e consider the language unambiguous: 'by reason of' means 'because of,' Black's Law

Dictionary 201 (6th ed. 1990), and thus necessitates an analysis at least approximating a 'but-for' causation test."). Appellants cite Pacific for the proposition that this "but-for" causation test is strictly limiting and permits a finding of causation only if execution of the bond was the proximate cause or immediately preceding cause of the liability. Pacific, however, does not support Appellants' position. In fact, we find no authority interpreting the straightforward, "but-for" causation test in the limited or "proximate cause" manner Appellants advocate.

Rather, we agree with the district court that the "but-for" causation test is sufficiently broad to demonstrate that ICSP's participation in the arbitration would not have occurred had ICSP not executed the bond. Appellants presented no evidence tending to suggest any other reason or explanation for ICSP's participation in the arbitration. Further, the potential liability ICSP faced could not have existed without ICSP's execution of the bond with the property owner as obligee.

To the extent Appellants argue ICSP's voluntary participation somehow broke the chain of but-for causation, we disagree. The voluntary or compulsory manner in which ICSP joined the arbitration, like the strategies ICSP employed during the arbitration and ICSP's choice of attorney and expert, may bear upon the reasonableness of ICSP's fees. None of the circumstances surrounding these issues, however, change the fact that ICSP would not have been involved in the arbitration but for the execution of the surety bond with the property owner as obligee.

Further, ICSP entered the arbitration only after the obligee under the bond, the property owner, made a claim on the bond, raised claims for compensatory and punitive damages against ICSP, and threatened to seek a federal order compelling arbitration. ICSP relied on Hoffman v. Fidelity & Deposit Co. of Maryland, 734 F. Supp. 192 (D.N.J. 1990), in determining that the property owner could compel arbitration based on the arbitration clause of the remediation contract as incorporated into the bond. Appellants now argue that a subsequent case debunks this legal theory and demonstrates that ICSP could not have been required to arbitrate. See Gloucester

-8-

City Bd. of Educ. v. Am. Arb. Ass'n, 755 A.2d 1256 (N.J. Super. Ct. App. Div. 2000). Gloucester is of no consequence in the present case, however, because ICSP was entitled to rely upon Hoffman, which, at the time, appeared to be a correct statement of law. Further, even if we were to assume ICSP had not been entitled to rely upon Hoffman, it still is by no means clear that it would be appropriate to characterize ICSP's participation in the arbitration as voluntary. At a minimum, ICSP faced the potential expense of having to defend a motion to compel. If ICSP had succeeded in that effort, ICSP faced the risk of having to defend a substantive battle in the courts rather than in the arbitral forum. At any rate, it matters not whether the bond and contract required Appellants' consent for ICSP's participation, whether the property owner successfully could have compelled ICSP to arbitrate, or whether some of ICSP's and Appellants' positions were aligned in the arbitration. Under the "but-for" causation test at issue today, it is clear that ICSP would not have participated in the arbitration but for the execution of the bond.

B. Reasonableness of Fees

In the alternative, Appellants argue ICSP's fees were unreasonable because Appellants' and ICSP's positions were largely aligned throughout the arbitration such that ICSP's attorney and expert were redundant or even harmful to the arbitration process. Appellants also argue that even if it had been proper for ICSP to participate in the arbitration, ICSP's attorney and expert witness simply spent an excessive amount of time on the case, making their fees unreasonable.

In assessing reasonableness, we first note that the indemnity agreement itself does not contain any language limiting the Appellants' obligation to pay ICSP's fees to only those fees that were reasonable. Our court and Missouri's courts, however, generally will infer a reasonableness requirement in all contractual fee provisions as a matter of public policy. See, e.g., Farmland Indus. v. Frazier-Parrott Commodities, 111 F.3d 588, 591–92 (8th Cir. 1997) (applying Missouri law and affirming a district court's grant of attorney fees under a contractual fee-shifting provision where the cited

contractual provision did not contain a reasonableness limitation and where the district court had "granted attorneys' fees that fell within a range that it considered reasonable and equitable"); Kaminsky v. Kaminsky, 29 S.W.3d 388, 390 (Mo. Ct. App. 2000). Accordingly, Appellants are correct to argue that ICSP's fees must be limited to those that are reasonable.

Appellants argue that questions of fact abound as to the reasonableness and propriety of ICSP's attorney and expert witness fees and that summary judgment was, therefore, inappropriate. We have repeatedly stated, however, that district courts rather than juries are the authorities as to the reasonableness of attorney fees. As such, fee award determinations generally do not involve jury questions, and we review district courts' fee awards under the abuse of discretion standard. See Fish v. St. Cloud State Univ., 295 F.3d 849, 852 (8th Cir. 2002) ("The district court was in the best position to assess the work done by counsel."); Webner v. Titan Distribution, Inc., 267 F.3d 828, 383 (8th Cir. 2001); State ex rel. Chase Resorts v. Campbell, 913 S.W.2d 832, 835 (Mo. Ct. App. 1995) (granting a writ of prohibition to preclude trial court from holding jury trial on issue of reasonableness of attorney fees as it was for the judge to determine the reasonableness of fees incurred as a matter of law); Am. Bank of Princeton v. Stiles, 731 S.W.2d 332, 339 (Mo. Ct. App. 1987) ("[T]he trial court is an expert in the reasonableness of attorneys' fees, and its judgment as to an award of such fees shall only be modified upon a finding of a manifest abuse of discretion."). This is true whether the fee award occurs in the context of a grant of summary judgment or following a jury trial. See R.D. Offutt Co. v. Lexington Ins. Co., 494 F.3d 668, 675 (8th Cir. 2007) (applying abuse of discretion standard to review award of attorney fees to insured following grant of summary judgment against insurer); Am. Bank of Princeton, 731 S.W.2d at 339 ("[T]he reasonableness of attorneys' fees is a matter of law to be decided by the court. Therefore, even if defendants challenge the reasonableness of the fee by affidavit, such does not raise a genuine issue of fact." (citation omitted)).

Further, the arguments on appeal in this case show that the present dispute as to fees is not factual in nature. Appellants do not take issue with ICSP's factual assertion that ICSP's attorney and expert witness expended the hours as claimed or that ICSP paid these fees as they were incurred. Rather, Appellants attack the judgment exercised by ICSP, its attorney, and its expert witness in electing to participate so extensively in the arbitration. These arguments involve only the issue we typically entrust to the discretion of the district courts, namely, assessment of the professional judgment exercised in the decision to spend attorney time.

Regarding the burden of proof, the indemnity agreements in the present case explicitly set forth a method for proving attorney fees. The agreements contain a burden shifting framework that permitted ICSP to use an itemized sworn statement from an officer of the company as prima facie evidence of its fees. Having submitted such a statement (and having supported that statement with additional documentation regarding the fees), the burden shifted to Appellants to rebut the prima facie showing. In the district court, then, Appellants bore the burden of disproving ICSP's sworn statement and proving the requested fees were unreasonable. Because Appellants do not challenge the factual basis of the fee request, all that remains is the assessment of reasonableness.

Appellants' attacks on the reasonableness of ICSP's fees fall into two categories. First, Appellants argue it was unreasonable for ICSP to participate in the arbitration on such a large scale. We characterize this challenge as a general challenge to ICSP's participation and general strategy. Second, Appellants attack the fees on a piecemeal, item-by-item basis.

Regarding the general arguments, Appellants assert ICSP's participation was redundant because Appellants' and ICSP's positions were aligned, Appellants were represented by counsel, and ICSP and its attorney should not have employed a

technical expert.[5] Appellants' assertion as to the alignment of positions, however, is only partially correct because the parties' positions in arbitration were aligned only in part. ICSP held separate suretyship defenses. For example, ICSP claimed overpayment by the property owner because the property owner incurred substantial additional remediation expenses without consulting ICSP. This defense provided one of the two alternative bases for the arbitrators' ruling in ICSP's favor. In addition, some of ICSP's arguments in arbitration depended on allegations contrary to Appellants' interests. For example, ICSP alleged the third-party inspector had improperly approved certain work that Spirco performed.

Further, the district court was entitled to view ICSP's fees as reasonable because ICSP faced substantial liability relative to the fees expended (the property owner's claim was in excess of the bond limits). See Hensley v. Eckerhart, 461 U.S. 424, 430 n. 3 & 434 n.9 (1983) (noting that factors, including "the amount involved and the results obtained" may be considered in assessing the reasonableness of a fee). Additionally, the district court was entitled to view ICSP's extensive participation as reasonable in light of uncertainty as to the Appellant-indemnitors' solvency.[6] This uncertainty meant ICSP faced potential liability for the full amount of the bond limits without a meaningful guarantee of indemnification. Appellants' refusal to post the bond limits and refusal to bear the entire defense demonstrate this point. Also, because Appellants were backed by ICSP's surety obligations and because ICSP had negotiated the claim down to the bond limits prior to incuring fees, Appellants were not necessarily as motivated as ICSP to defend the underlying claims. Against this

---

[5]We note that between 1/4 and 1/3 of the total fee award represents fees ICSP paid to the technical expert.

[6]One of the named Appellants, Joel Spirtas, declared bankruptcy and argued below that he was prejudiced by ICSP's failure to raise its indemnity claim in a more timely fashion because he failed to list the claim as a liability in bankruptcy and therefore did not obtain a bankruptcy discharge of the claim.

-12-

backdrop, the district court was entitled to determine that ICSP acted reasonably when it elected to vigorously defend itself with a substantial investment of attorney time.

Regarding Appellants' general challenges to the extensive use of a technical expert, ICSP correctly argues that it was the only party to the arbitration not actually present and involved in the underlying remediation project. As such, it was not unreasonable for ICSP's attorney to employ the assistance of a technical expert to assist in the arbitration. Further, Appellants did not present their own technical expert, and it was reasonable for the district court to view ICSP's expert as a necessary and integral part of the defense for Appellants and ICSP.

Finally, to the extent Appellants argue it generally was unreasonable for ICSP to participate in the arbitration rather than waiting for a court order compelling arbitration or addressing the bond claims in a judicial forum, the district court was free to reject this argument. As already noted, ICSP joined the arbitration under threat of compulsion and relied on then-current authority in assessing the property owner's likely ability to secure a court order compelling arbitration. Even if ICSP had been incorrect in its view as to the property owner's ability to compel arbitration, the property owner had threatened to do so, and it was not unreasonable for ICSP to enter the arbitration to avoid the expense of defending a motion to compel or the expense of litigating the merits of the bond claims in federal court.

Regarding the specific or piecemeal attacks that Appellants direct towards individual examples of participation by ICSP's attorney and expert witness, we are unwilling to disturb the judgment of the district court. Both sides point to comments in the arbitration record where the arbitrators chided attorneys for all parties for taking too long in their questioning. The arbitrators, however, did not direct their comments solely at ICSP's attorney or at Spirco's attorney, but at both. The comments appear to express a general frustration with the contentiousness and protracted nature of the arbitration rather than complaints directed at ICSP's attorney for taking unnecessary, redundant, or unreasonable actions during arbitration. In this context, we cannot say

the district court abused its discretion by discounting the comments cited by Appellants.

Importantly, as noted above, our standard of review is only for abuse of discretion, and the bonding contract clearly placed the burden on Appellants to disprove ICSP's prima facie showing as to fees. We do not believe that district court abused its considerable discretion in this case by holding that Appellant's failed to prove ICSP's fees were unreasonable.

We affirm the judgment of the district court.

_____