**J. S. & H. CONSTRUCTION COMPANY,**
**Plaintiff-Appellant,**

v.

**RICHMOND COUNTY HOSPITAL**
**AUTHORITY et al., Defendants-**
**Appellees.**

No. 72–1961.

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1973.

Thomas R. Burnside, Jr., Augusta, Ga., Lewis, Mitchell & Moore, McLean, Va., Paul J. Walstad, Vienna, Va., for plaintiff-appellant.

Robert C. Norman, Augusta, Ga., Samuel C. Waller, Augusta, Ga., Luther P. House, Jr., Kent P. Smith, Atlanta, Ga., for defendants-appellees.

Before RIVES, THORNBERRY and GOLDBERG, Circuit Judges.

THORNBERRY, Circuit Judge:

J. S. & H. Construction Company, plaintiff below in this diversity case, appeals from the district court's order staying further proceedings pending arbitration between J. S. & H. and defendant-appellee George A. Fuller Company.[1] We affirm.

George A. Fuller Company, a Maryland corporation with its principal place of business in New York, contracted as prime contractor with Richmond County Hospital Authority, Augusta, Georgia, to build a university hospital. The "General Conditions" of the prime contract included a provision that the parties would submit contract disputes to arbitration and that neither party had "a right of legal action" based on the contract until the arbitrators reached a decision.[2] Fuller then entered into a subcontract with J. S. & H. Construction Company, a legal entity of New Mexico, under which J. S. & H. was to furnish labor and materials for the construction of the hospital. The subcontract contained no express arbitration provision, but it incorporated by reference the "General Conditions" of the prime contract and explicitly provided that the subcontractor assumed toward the prime contractor those responsibilities and obligations which the prime contractor assumed toward the Hospital Authority in the prime contract.[3] Fuller and its surety, Aetna

---

[1] The stay order is appealable under 28 U.S.C.A. § 1292(a)(1) as an order equivalent to an injunction. In Jackson Brewing Company v. Clarke, 5th Cir. 1962, 303 F.2d 844, 845, cert. denied 371 U.S. 891, 53 S.Ct. 190, 9 L.Ed.2d 124, reh. denied 371 U.S. 939, 83 S.Ct. 305, 9 L.Ed.2d 272, this court stated the applicable rule:

> An order staying or refusing to stay proceedings in the District Court is appealable under § 1292(a)(1) only if (A) the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law; *and* (B) the stay was sought to permit the prior determination of some *equitable* defense or counterclaim.

*See also* H. W. Caldwell & Son, Inc. v. United States for Use and Benefit of John H. Moon & Sons, Inc., 5th Cir. 1969, 407 F.2d 21, 22. The instant contract and *quantum meruit* action for damages is a clearly legal one, and the arbitration proceedings, which the district court ruled must precede further litigation, are equitable in nature. Thus, the order falls precisely within the *Jackson Brewing Company* rule and is appealable.

[2] The pertinent provision of the prime contract reads:

> 7. Arbitration. (a) It is mutually agreed that all disputes arising in connection with this contract shall be submitted to arbitration in accordance with the provisions of the current Standard Form of Arbitration Procedure of the American Institute of Architects and that all findings of fact by the arbitrators under this agreement shall be conclusive and binding on both parties. It is further mutually agreed that the decision of the arbitrators shall be a prior condition to any right of legal action which either party to the contract may have against the other.

[3] The pertinent provision of the subcontract reads:

> 1. Subcontractor agrees to furnish and pay for all materials, labor, scaffolding, equipment, tools, appliances, licenses,

Casualty and Surety Company, executed a payment bond which guaranteed prompt payment for labor and materials used in the project and which provided that any action to recover on the bond must be brought within one year after Fuller ceased working on the project.

Within one year of the time Fuller ceased work on the project, J. S. & H. sued Fuller, Aetna, and the Hospital Authority in the district court for the value of work and materials supplied on the project and for damages resulting from breach of the subcontract by Fuller. The total claim exceeded one million dollars. The Hospital Authority cross-claimed against Fuller and Aetna, and the latter two defendants moved for a stay of proceedings pending arbitration between J. S. & H. and Fuller as provided in the "General Conditions" of the prime contract, which the subcontract appears to incorporate by reference. The district court granted this motion, and J. S. & H., wishing to avoid arbitration and proceed directly to litigation, prays on this appeal that we vacate the stay order.

J. S. & H. argues that the incorporation of the prime contract's "General Conditions" by reference was ineffective to make the prime contract's arbitration provision a part of the subcontract, so that J. S. & H. is not contractually bound to arbitrate. To support this position J. S. & H. cites several Miller Act [4] cases [5] which hold a similar general incorporation by reference in a subcontract insufficient to incorporate the disputes clause of the prime contract and argues that the policy considerations discussed in those cases apply with equal force to this case. Fuller and Aetna contend the arbitration provision was made part of the subcontract and seek to distinguish the Miller Act cases. Thus, the fundamental question on which the parties disagree is whether the arbitration provision was incorporated by reference into the subcontract.

We orient ourselves in this case by reference to two settled propositions, which no party disputes. The first is that in a contract "evidencing a transaction involving commerce," such as the subcontract in this case,[6] arbitration provisions are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. In the Federal Arbitration Act, 9 U.S.C.A. §§ 1–14, Congress has expressed a

permits and everything necessary for the proper completion of the Work described in paragraph 2 hereof, for a University Hospital for Richmond County Hospital Authority, Augusta, Georgia hereinafter called Owner, in accordance with the General Conditions, Special Conditions and Supplementary General Conditions of the Contract between the Owner and the Contractor and in accordance with the Drawings and Specifications prepared by Kuhlke Wade and Gauger hereinafter called the Architect; all of which General Conditions, Special Conditions, Supplementary General Conditions, Drawings and Specifications (hereinafter referred to as "Contract Documents") form a part of the Contract between the Contractor and the Owner dated July 14, 1967 and are hereby made a part of this Subcontract. Subcontractor agrees to be bound to the Contractor by all of the terms of the agreement between the Contractor and the Owner and by the Contract Docu-ments and to assume toward the Contractor all of the obligations and the responsibilities that the Contractor by those instruments assumes toward the Owner.

4. 40 U.S.C.A. § 270a et seq.

5. See H. W. Caldwell & Son, Inc. v. United States for Use and Benefit of John H. Moon & Sons, Inc., 5th Cir. 1969, 407 F.2d 21; Warrior Contructors, Inc. v. Harders, 5th Cir. 1967, 387 F.2d 727; Beacon Construction Co. v. Prepakt Co., 1st Cir. 1967, 375 F.2d 977; Central Steel Erection Co. v. Will, 9th Cir. 1962, 304 F.2d 548; Fanderlik-Locke Co. v. United States for the Use of M. B. Morgan, 10th Cir. 1960, 285 F.2d 939.

6. The district court concluded that the subcontract was a contract "evidencing a transaction involving commerce" and was thus subject to the provisions of the Federal Arbitration Act, 9 U.S.C.A. § 2. Appellant does not challenge this conclusion on appeal.

strong policy favoring arbitration before litigation, and the courts are bound to take notice of this broad policy as well as specific statutory provisions in dealing with arbitration clauses in contracts. The second undisputed proposition is that, as a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where, as here, the provision to which reference is made has a reasonably clear and ascertainable meaning. These two propositions tend to indicate the arbitration provision in this case was a valid and enforceable part of the subcontract. The narrow contested issue which remains is whether the Miller Act cases create a special rule or exception which prevents incorporation of an arbitration provision by general reference in the subcontract in this case, which is not a contract subject to the Miller Act. Having examined these cases, we conclude they do not create such an exception.

■ In the Miller Act cases, the principal basis for judicial skepticism toward incorporation by general reference of the prime contract "disputes clause" [7] has been awareness of the vulnerable position in which the disputes clause would place the subcontractor and of Congress's intent to protect the subcontractor by establishing specific statutory rights.[8] The Miller Act provides that before the United States awards a contract for an amount over $2,000 for construction of a public building or public work to a contractor, that contractor must furnish a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for" in the contract. 40 U.S.C.A. § 270a(a)(2). Upon default by the prime contractor, materialmen and laborers may sue on the payment bond in federal district court. 40 U.S.C.A. § 270b. The bond required by the Act and the possibility of a suit on it often provide the subcontractor's only insurance against financial disaster due to a prime contractor's default. In no case does the subcontractor have a claim or lien against the government-owner. United States for the Benefit of B's Company v. Cleveland Electric Company, 4th Cir. 1967, 373 F.2d 585, 588. If the disputes clause were deemed a part of the subcontract, the nature of the obligation it would impose on the subcontractor is problematic. It would not provide for participation by the subcontractor in the administrative proceed-

---

7. The standard disputes clause used in government contracts is reproduced in Fanderlik-Locke Co. v. United States for the Use of M. B. Morgan, *supra* note 5, 285 F.2d at 941:

"Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the head of the department, and the decision of the head of the department or his duly authorized representatives for the hearings of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith, be final and conclusive: Provided, That if no such appeal to the head of the department is taken, the decision of the Contracting Officer shall be final and conclusive * * *."

8. In its brief JS&H states that the payment bond was required by state law, but does not cite any such law. We assume appellant refers to Ga.Code Ann. 23–1705, which requires public contractors to furnish payment bond for the benefit of subcontractors and appears to be parallel in scheme and purpose to the Miller Act. Assuming the Georgia statute to be applicable and to have a purpose similar to that of the Miller Act, we do not believe the existence of the statute alone calls for following the rationale of the Miller Act cases in this case. Counsel have not cited and our research has not revealed any Georgia case under this statute or otherwise which follows the rationale of the Miller Act cases.

ings described in the disputes clause or for arbitration between the prime and the subcontractor:

> There is no procedure by which the claim of the subcontractor can be presented against the United States except as it may become a claim of the prime contractor, since there is no contract, express or implied, between the subcontractor and the government. United States v. Blair, 321 U.S. 730, 737, 64 S.Ct. 820, 88 L.Ed. 1039. The subcontractor has no standing before the Contracting Officer or the Board of Contract Appeals, and no provision is made for the hearing of disputes between a prime contractor and a subcontractor.

Fanderlik-Locke Company v. United States for the Use of M. B. Morgan, 10th Cir. 1960, 285 F.2d 939, 942. Prime contractors have argued that the disputes clause would require the subcontractor to be bound by the result of the administrative dealings between the government and the prime contractor which are relevant to the subcontractor's claim. *See, e. g.,* Fanderlik-Locke Company v. United States for the Use of M. B. Morgan, supra; H. W. Caldwell & Son, Inc. v. United States for the Use and Benefit of John H. Moon & Sons, Inc., 5th Cir. 1969, 407 F.2d 21. Courts have recognized, however, that this arrangement would amount to a virtual forfeiture of the subcontractor's Miller Act rights.

> If [the subcontractor] is limited to the presentation of his claims as provided for in the "disputes clause" of the prime contract, he has surrendered his right to the benefits of the Miller Act provisions. The findings of the administrative authorities as to the amount he is entitled to recover would be conclusive, unless the court determined them to be "fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith." See 41 U.S.C.A. § 321. An agreement should not be construed to bring about such a result unless it be "manifest by plain language" of the contract.

Fanderlik-Locke Company v. United States for the Use of M. B. Morgan, *supra,* 285 F.2d at 943. The very purpose of the Miller Act was "to provide security for those who furnish labor and material in the performance of government contracts," *Id.* 285 F.2d at 942, and "the courts do not favor finding that a subcontractor has contractually abandoned his rights under the act." H. W. Caldwell & Son, Inc. v. United States for the Use and Benefit of John H. Moon & Sons, Inc., *supra,* 407 F.2d at 23.

■ J. S. & H.'s position under the arbitration provision at issue in this case is significantly different from the position the subcontractors would have occupied under the disputes clause in the Miller Act cases. Under the arbitration provision J. S. & H. does not lose its right to press its claim against Fuller and need not passively rely on Fuller's presentation of a corresponding claim to the Hospital Authority. The arbitration procedure provided contemplates participation by both prime and subcontractor, and J. S. & H. may pursue and protect its own interests in the proceedings. The arbitrator's award may later be subjected to judicial scrutiny. A contract provision of this type requiring arbitration before litigation is not a harsh one or, we think, one which a subcontractor would probably not intend to accept by way of a general incorporation by reference. On the contrary, such a contract provision provides a common and rational means for settling contract disputes and accords fully with the policy of the Federal Arbitration Act. We find the rationale of the Miller Act cases inapplicable to the instant case, and hold that the prime contract arbitration provision was incorporated by reference into the subcontract and is binding on appellant J. S. & H. *Cf.* Uniroyal, Inc. v. A. P. Epstein & Sons, Inc., 7th Cir. 1970, 428 F.2d 523.

J. S. & H. makes an alternative argument which deserves only brief mention;

it contends that even if the action on the subcontract was properly stayed pending arbitration, the action on the bond should not have been stayed. By its terms, the bond insures payment "for all labor and material used or reasonably required for use in the performance of the [prime] Contract." Any obligation under the bond must derive from a contractual obligation, and an action on the bond cannot precede a determination of the contract debt. The opposite conclusion would be inconsistent with the terms of the bond and would completely circumvent and render meaningless the arbitration provision which we have held to be a part of the subcontract.

The order of the district court staying proceedings pending arbitration is affirmed.