**CIANBRO CORPORATION, Plaintiff,**

v.

**EMPRESA NACIONAL DE INGENIE-RIA Y TECHNOLOGIA, S.A., et al., Defendants.**

**No. 88–0019B.**

United States District Court, D. Maine.

Oct. 14, 1988.

Joanne F. Cole, W. John Amerling, Amerling & Burns, Portland, Me., for plaintiff.

William G. Meserve, Douglas H. Meal, Christopher R. Hall, Ropes & Gray, Boston, Mass., John A. Mitchell, Verrill & Dana, Portland, Me., for ENSA Initec.

Elizabeth G. Stouder, Richardson & Troubh, Portland, Me., Robert McL. Boote, William G. Frey, Francine Friedman, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for Ins. Co. of North America.

## ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION

GENE CARTER, District Judge.

### I. *Introduction*

This case comes before the Court on Plaintiff's Motion for Order Compelling Arbitration, filed on April 21, 1988. Plaintiff Cianbro Corporation ("Cianbro") brings this motion pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, to compel Defendant Insurance Company of North America ("INA") to arbitrate all disputes arising out of a construction subcontract for which INA provided payment and performance bonds. For the reasons set out herein the Court hereby grants this motion.

### II. *Factual Background*

On or about December 20, 1985, Cianbro entered into a $34.4 million contract with Fairfield Energy Venture (the "Contract") under which Cianbro would provide all design, engineering, construction and materials for a wood-fired boiler and electrical generating facility in Fort Fairfield, Maine. On or about that date, Cianbro also entered into a contract with Defendants Empresa Nacional de Ingenieria y Technologia, S.A. and Equipos Nucleares, S.A. (jointly "ENSA–INITEC") (the "Subcontract"), under which ENSA–INITEC would design and provide certain products and provide certain services called for under the Contract. Under the Subcontract, ENSA–INITEC was required to obtain payment and performance bonds in favor of Cianbro as obligee. INA underwrote and issued Performance Bond No. 677HF–9989 (the "Performance Bond") and Payment Bond No. 67HF–9989A (the "Payment Bond") for the project.

The Subcontract contained a clause requiring the parties to decide "all claims, disputes, and other matters in question arising out of or relating to [the Subcontract]" through arbitration.[1] INA, as surety, is not a signatory to the Subcontract. Both the Payment Bond and the Performance Bond, however, specifically incorporate the Subcontract by reference.[2]

---

1. Article 14.2 of the Subcontract reads as follows:

     All other claims, disputes, and other matters in question arising out of or relating to this Agreement or the breach thereof, if not settled between the parties by agreement, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining, unless the parties mutually agree otherwise. Such action shall be initiated by the filing of a demand for arbitration in accordance with the Construction Industry Arbitration Rules of the

American Arbitration Association and such arbitration shall then be conducted in accordance with such rules. This agreement to arbitrate shall be specifically enforceable under the prevailing law of Maine. The award rendered shall be final and judgment may be entered upon the award by any court having jurisdiction thereof.

2. The Payment Bond and the Performance Bond both contain the following identical language:

     "... [W]hich subcontract is by reference made a part hereof, and is hereafter referred to as the subcontract."

On December 16, 1987, Cianbro issued a Demand for Arbitration ("Demand"), pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"), to ENSA–INITEC and INA. The Demand alleged breach of contract and negligence on the part of ENSA–INITEC under the Subcontract, and included INA as surety for ENSA–INITEC's payment and performance obligations. In response to this Demand for Arbitration, INA prepared and sent a letter to the AAA dated February 4, 1988, requesting a ruling that INA was not a proper party to the arbitration because no arbitration agreement existed between Cianbro and INA. On March 9, 1988, the AAA granted INA's request, stating that INA could not be included in the arbitration proceedings absent either their agreement or a court order. Plaintiff Cianbro now moves this Court to compel INA to participate in the arbitration proceedings.

### III. *Analysis*

A threshold issue to be addressed is whether the language in the Subcontract's arbitration clause encompasses this matter between the general contractor and the surety for the subcontract. The language in the arbitration clause provides that "all ... claims, disputes, and other matters in question arising out of or relating to this [Subcontract] or the breach thereof, if not settled between the parties by agreement, shall be decided by arbitration...." The core conflict arises between the general contractor, Cianbro, and the subcontractor, ENSA–INITEC, concerning performance of the Subcontract obligations. The conflict raised on this Motion to Compel Arbitration is between Cianbro and INA as the surety for the subcontractor's obligations. As surety for ENSA–INITEC's payment and performance obligations under the Contract, INA incurs no obligation unless and until a breach of the agreement occurs. Because a breach of the underlying agreement is required to trigger the surety's obligations, the issue between Cianbro and INA concerning INA's obligations under the payment and performance bonds is a matter "arising out of or relating to" the Subcontract.

The Court must next address whether INA is bound by the arbitration agreement. In arguing that it is not bound to arbitrate, INA places great weight on the fact that the arbitration clause is embodied only in the Subcontract, to which INA is not a party. INA argues that the arbitration agreement binds only the signatories to the Subcontract. The mere fact that INA is not a signatory to the Subcontract, however, does not preclude it from being subject to the arbitration clause. *Hartford Financial Systems, Inc. v. Florida Software Services, Inc.*, 550 F.Supp. 1079, 1086 (D.Me.1982) ("nonsignatories to a contract containing an arbitration clause may be deemed parties thereto ... for purposes of the Federal Arbitration Act"); *see Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966, 973 (2d Cir. 1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976).

Both the Payment Bond and the Performance Bond issued by INA incorporate the Subcontract terms by reference, each stating that the "[S]ubcontract is by reference made a part hereof." Such incorporation by reference is generally effective to accomplish its intended purpose where the contract provision to which reference is made has a "reasonably clear and ascertainable meaning." *J.S. & H. Construction Co. v. Richmond County Hospital Authority*, 473 F.2d 212, 215 (5th Cir.1973). The Court finds that the arbitration clause employed in the Subcontract, which reads in pertinent part that "all ... claims, disputes, and other matters in question arising out of or relating to this Agreement or the breach thereof ... shall be decided by arbitration," has such a reasonably clear and ascertainable meaning and is, therefore, validly incorporated into the INA bonds. *See J.S. & H. Construction Co.*, 473 F.2d at 215 (arbitration agreement that read in pertinent part "[i]t is mutually agreed that all disputes arising in connection with this contract shall be submitted to arbitration" found to have a reasonably clear and ascertainable meaning).

Because the surety's bond clearly incorporates the subcontract terms by reference, and the incorporated subcontract contains a mandatory arbitration clause, the surety is bound to arbitrate. The Eleventh Circuit has recently so held in a case involving facts parallel to those presented here. In *United States Fidelity and Guaranty Co. v. West Point Construction Co.*, 837 F.2d 1507 (11th Cir.1988), West Point Construction Company, a general contractor, entered into a subcontract agreement with Pruett Brothers Paint Contractors. This subcontract agreement, which contained an arbitration clause, was incorporated by reference into the performance bond issued by the United States Fidelity and Guaranty Company ["USF & G"]. When West Point Construction sought to enforce the arbitration agreement, USF & G opposed, arguing in part that the bond's incorporation by reference clause did not incorporate the arbitration clause.[3] The Court of Appeals for the Eleventh Circuit decided that USF & G was bound to arbitrate:

> The condition of the USF & G bond was proper performance of the subcontract by Pruett. The subcontract was referred to and made a part of the bond. Disputes arising under the contract, including disputes concerning the adequacy of Pruett's performance, were subject to arbitration pursuant to the arbitration provisions of the subcontract. We conclude that the incorporation of the subcontract into the bond expresses an intention of the parties, including USF & G, to arbitrate disputes.

837 F.2d at 1508.

The Court of Appeals for the Sixth Circuit decided similarly when presented with largely parallel facts in *Exchange Mutual Insurance Co. v. Haskell Co.*, 742 F.2d 274 (6th Cir.1984). In *Exchange Mutual Insurance*, general contractor Haskell subcontracted with Rogersville Company to construct a portion of the shopping center for which Haskell had contracted. Rogersville obtained a performance bond from Exchange Mutual Insurance Company. The general contract contained an arbitration clause, which the subcontract incorporated by reference. The performance bond in turn incorporated the terms of the subcontract. Even though the arbitration clause found in the general contract in *Exchange Mutual Insurance* is one step further removed from the surety bond than is the arbitration clause in the instant case, the surety was still bound to arbitrate:

> Here, the performance bond specifically referred to and incorporated the contract. The subcontract provides that the same obligations and responsibilities apply in the subcontract as apply in the general contract. And, finally, the general contract provides that there is a duty to arbitrate. Thus, the performance bond incorporates by reference the subcontract, the subcontract incorporates by reference the general contract and hence the duty to arbitrate.

742 F.2d at 276. Where two levels of incorporation by reference still result in a surety's duty to arbitrate, incorporating by reference an arbitration clause directly should certainly compel the surety's participation.

Addressing slightly different facts in *J & S Construction Co., Inc. v. Travelers Indemnity Co.*, 520 F.2d 809 (1st Cir.1975), the Court of Appeals for the First Circuit also enforced the incorporation by reference of a subcontract arbitration clause into a performance bond. In *Travelers Indemnity Company*, it was the surety rather than the general contractor who sought to enforce the arbitration clause. Because the surety bond explicitly incorporated the contract by reference, the court disagreed with the subcontractor's objection that the surety was not a signatory to the subcontract and thus could not seek arbitration. Id. at 810. Although it was the surety and not the contractor seeking arbitration, the principle of enforcing the arbitration clause incorporated by reference into the surety bond remains the same. Just as the sub-

---

**3.** The general contract between the West Point Construction Company and the Lee County Commission for the total construction project also contained an arbitration clause. USF & G argued that neither the arbitration clause contained in the general contract nor that contained in the subcontract was incorporated by reference into the performance bond.

contractor in *Travelers Insurance Company* was compelled to arbitrate under the incorporated arbitration clause, so is the surety compelled to arbitrate in the instant case.

A strong federal policy in favor of arbitration backs this Court's decision to compel INA to arbitrate. The Supreme Court has adopted the position that questions of arbitrability must be addressed with a healthy regard for the federal policy forming arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–5, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983) (footnote omitted) ("the [Federal] Arbitration Act establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or alike defense to arbitrability"). The Court of Appeals for the Eleventh Circuit cited this federal pro-arbitration policy as support for its holding in *United States Fidelity & Guaranty Company v. West Point Construction Company*, 837 F.2d 1507, 1508 (11th Cir.1988) that a surety is bound to arbitrate under an arbitration agreement incorporated by reference into a performance bond ("[o]ur conclusion is supported by the strong policy favoring arbitration expressed by Congress in the Federal Arbitration Act"). This policy also lent support to the Fifth Circuit's holding in *J.S. & H. Construction Company v. Richmond County Hospital Authority*, 473 F.2d 212, 214–5 (5th Cir.1973) ("[i]n the Federal Arbitration Act ... Congress has expressed a strong policy favoring arbitration before litigation, and the courts are bound to take notice of this broad policy as well as specific statutory provisions in dealing with arbitration clauses in contracts"). The Court of Appeals for the First Circuit has taken a similar view that federal law favors arbitration. *Hilti, Inc. v. Oldach*, 392 F.2d 368, 371 (1st Cir.1968) (citing "vigorous policy favoring arbitration").

■ At the core of INA's argument in opposition to Plaintiff's Motion to Compel Arbitration is specific language included in the Payment Bond and the Performance Bond addressing the course of litigation under the bonds. The Payment Bond provides, in pertinent part:

> ■ No suit or action shall be commenced hereunder by any claimant ...
>
> [b] Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof is situated, or in the United States District court for the district in which the project, or any part thereof, is situated, and not elsewhere.

The Performance Bond provides, in pertinent part:

> Any suit under this bond must be instituted before the final expiration of two years from date on which final payment under the subcontract falls due.

INA contends that this language manifests the parties' intent to litigate any claims under the bonds and precludes INA's mandatory participation in arbitration. INA further contends that this language's presence in the bond distinguishes the instant case from the pro-arbitration precedent cited above in this opinion. We do not agree. The language indicated does not require the parties to litigate any and all disputes that arise under the bonds. This language merely declares "ground rules" under which any formal litigation in a judicial forum must proceed. Thus, the operative language in the Payment Bond limits the jurisdiction in which any litigation over the bond may occur. Similarly, the Performance Bond language simply declares a "statute of limitation" in which any litigation arising under the bond must be initiated. This language in these bonds clearly is not intended to preempt the arbitration clause incorporated by reference from the subcontract, nor does it distinguish this case from the precedent cited above.

INA also argues that it cannot be compelled to arbitrate, even though it could voluntarily elect to participate. The Court does not agree. INA argues that for the Court to compel INA to arbitrate against its will is inconsistent with the voluntary

nature of the arbitration process. This reasoning is flawed, however, because in issuing bonds that incorporate the arbitration clause by reference, INA has voluntarily agreed to arbitrate disputes consistent with that clause. This Court's order to INA to participate in the arbitration is consistent with INA's voluntary incorporation by reference of the arbitration clause.

Accordingly, it is ORDERED that Plaintiff's Motion to Compel Arbitration be, and it is hereby, GRANTED.