**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 01-30371**

---

**THE JEWISH FEDERATION OF GREATER NEW ORLEANS;**
**WOLDENBERG VILLAGE, INC.,**

**Plaintiffs-Counter Defendants-Appellees,**

**versus**

**FIDELITY & DEPOSIT COMPANY OF MARYLAND,**

**Defendant-Counter Claimant-Appellant.**

---

**Appeal from the United States District Court**
**for the Eastern District of Louisiana**
**(053L-2: 00-CV-2368-S)**

---

August 29, 2001

Before KING, Chief Judge, BARKSDALE, Circuit Judge, and NOWLIN, District Judge.[1]

PER CURIAM:[2]

Primarily at issue is whether Appellant, the surety on a construction contract, is required to arbitrate a time-bar defense under its performance bond, pursuant to the bond's incorporation of the arbitration provision in the construction contract. **AFFIRMED.**

---

[1] Chief Judge of the Western District of Texas, sitting by designation.

[2] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

In December 1991, the Jewish Federation of Greater New Orleans (Federation) entered into a contract with Goliath Construction Company, Inc., for the construction of Woldenberg Village, an assisted living facility in New Orleans, Louisiana. That contract contains the following arbitration provision:

> Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.

Fidelity and Deposit Company of Maryland (Fidelity) issued a performance bond in connection with the project. The bond incorporates the construction contract by reference.

In April 2000, Appellees, Federation and Woldenberg Village, Inc., the corporation that purchased the project from Federation, filed a demand for arbitration with the American Arbitration Association, naming, *inter alia*, Fidelity, and claiming a breach of the construction contract. Three months later, Appellees filed a petition in state court seeking declaratory and injunctive relief compelling Fidelity to arbitrate their claims. The action was removed to federal court, and Fidelity counterclaimed for declaratory and injunctive relief. Both sides moved for summary judgment; Appellees' motion was granted. *Jewish Fed'n of Greater New Orleans v. Fidelity & Deposit Co. of Md*., No. 00-2368 (E.D. La. 6 Mar. 2001) (unpublished).

2

II.

We review a summary judgment *de novo*, applying the same standard applied by the district court. *E.g., **Dufrene v. Browning-Ferris, Inc.**,* 207 F.3d 264, 267 (5th Cir.), *cert. denied*, 531 U.S. 825 (2000). The judgment is proper if the summary judgment record, viewed in the light most favorable to the non-movant, establishes: there is no genuine issue of material fact; and the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); **Dufrene**, 207 F.3d at 267.

Fidelity contends the district court erred in compelling it to arbitrate its defense that the performance bond has lapsed. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." **AT&T Techs., Inc. v. Communications Workers of Am.**, 475 U.S. 643, 649 (1986). If a contract contains an arbitration clause, there is a presumption of arbitrability such that "[d]oubts should be resolved in favor of coverage". *Id.* at 650. This presumption is "particularly applicable where the clause is ... broad". *Id.*

As Fidelity conceded at oral argument, because its bond incorporates by reference the construction contract's arbitration provision, that provision is binding on Fidelity. *See **J.S. & H. Constr. Co. v. Richmond County Hosp. Auth.**,* 473 F.2d 212, 216 (5th Cir. 1973) (subcontractor bound by prime contract arbitration

3

provision incorporated by reference in subcontract). As noted, the arbitration provision provides in part: "Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration".

Both the Supreme Court and this court have concluded that similar arbitration clauses were broad and capable of expansive reach. *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). Because the arbitration provision is not limited to "Any controversy or Claim arising out of ... the Contract", but also applies to "Any controversy or Claim ... related to the [construction] Contract", it is not necessary that the dispute arise out of the construction contract to be arbitrable, but only that the dispute "touch matters covered by [the contract]". *Id.* at 1068 (internal quotation marks omitted). Mindful of the presumption of arbitrability, we conclude that Appellant's defense is a "controversy ... related to the Contract", and is, therefore, arbitrable under its "extremely broad" arbitration provision. *See id.*

"Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145, 149 (5th Cir. 1987)

4

(quoting ***John Wiley & Sons, Inc. v. Livingston***, 376 U.S. 543, 557 (1964)).  Limitations defenses, such as Fidelity's, are procedural issues that must be resolved by the arbitrator.  ***Smith Barney Shearson, Inc. v. Boone***, 47 F.3d 750, 754 (5th Cir. 1995).  *See also* ***Glass v. Kidder Peabody & Co.***, 114 F.3d 446, 456 (4th Cir. 1997) (time-bar defenses subject to arbitration); ***Shearson Lehman Hutton, Inc. v. Wagoner***, 944 F.2d 114, 121 (2d Cir. 1991) (same).  For the same reason, we will not address Fidelity's challenge to the composition of the arbitration panel.  *See* ***Boone***, 47 F.3d at 753 (procedural issues relate to how parties agreed arbitration is to be conducted).

III.

For the foregoing reasons, the judgment compelling arbitration is

***AFFIRMED.***

KING, Chief Judge, dissenting:

While I agree with my colleagues that Fidelity is bound to arbitrate any claims demanding construction of the underlying contract incorporated by reference into the performance bond, I would not extend this arbitration requirement to Fidelity's personal defenses arising from the provisions of the bond itself.

There are two apparently contrary lines of cases addressing the question whether a performance bond's incorporation by reference of an underlying construction contract containing an arbitration provision requires a surety who was not a party to the construction contract to arbitrate its personal defenses arising out of the bond. The majority adopts the reasoning espoused by the courts in Hoffman v. Fidelity & Deposit Co., 734 F. Supp. 192 (D.N.J. 1990), and Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co., 8 Cal Rptr. 2d. 587 (Cal. Ct. App. 1992) finding that an owner's claims against a surety regarding provisions of a performance bond are arbitrable when the performance bond incorporates by reference an arbitration provision in the construction contract. With all due respect to my colleagues on the panel, I believe that the better-reasoned line of cases is represented by Gloucester City Board of Education v. American Arbitration Association, 755 A.2d 1256 (N.J. Super. Ct. App. Div. 2000), and Fidelity & Deposit Co. v. Parsons & Whittemore Contractors Corp., 397 N.E.2d 380 (N.Y. 1979). These cases hold

6

that incorporation of an arbitration provision from an underlying construction contract does not bind the surety company to arbitrate with the contracting parties regarding disputes originating in the provisions of the bond, but instead ensures that the surety company participates in (or, at a minimum, is bound by the results of) an arbitration between the contracting parties based on the underlying contract. See Gloucester, 755 A.2d at 1262-63; Parsons, 397 N.E.2d at 382.

The Gloucester/Parsons interpretation is consistent with this court's precedent in J. S. & H Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212 (5th Cir. 1973), cited by the majority. J. S. & H. dealt primarily with the parties' obligations with respect to the underlying subcontract, holding that the parties were required to arbitrate the action on the subcontract. See id. at 216. However, with reference to the surety's claims on the bond itself, this court found only that "any action on the bond cannot precede a determination of the contract debt [by arbitration]," not that such an action on the bond would be subject to arbitration. Id. at 217. This analysis is consistent with the Parsons court's reasoning that a surety would be bound by the findings of an arbitration on the underlying contract, but not necessarily bound to arbitrate personal defenses based on the performance bond.

Moreover, contrary to the majority's assertion, a dispute regarding the enforceability of the terms of a performance bond

7

does not necessarily constitute a controversy or claim arising out of or related to the underlying contract. This court's analysis in Pennzoil Exploration & Production Co. v. Ramco Energy, Ltd., 139 F.3d 1061 (5th Cir. 1998) does not dictate otherwise. Pennzoil notes that language in an arbitration provision encompassing controversies or claims "arising out of or in connection with or relating to" an agreement (which is materially similar to the arbitration provision at issue in the instant case) should be construed broadly, to include claims beyond those that literally arise under the contract. See id. at 1067. However, the underlying contract in the instant case defines a "claim" as a "demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract" or "other disputes and matters in question between the Owner and Contractor arising out of or relating to the contract." As the performance bond is not included within the definition of the "contract,"[3] Fidelity's claim does not require construction of the contract and does not fall within the contractual definition of a "claim." Similarly, the dispute between Fidelity and the Appellees based on the language of the

---

[3] The underlying construction contract defines "the contract documents" to include "this Agreement, Conditions of the Contract . . . Drawings, Specifications, Addenda issued prior to the execution of this Agreement, other documents listed in this Agreement, and Modifications issued after the execution of this Agreement; these form the Contract . . . ."

8

bond cannot constitute a controversy "arising out of" or "related to" the contract if the definition of the "contract" does not encompass the provisions of the bond.  Thus, the plain language of the contract would not have put Fidelity on notice that, in incorporating the contract into the performance bond, it was agreeing to arbitrate disputes grounded in the language of the bond itself.

Because I do not believe that incorporation of the underlying construction contract's arbitration provision into the performance bond requires Fidelity to submit its personal defenses based on the language of the bond agreement to arbitration, I respectfully dissent.

9