**UNITED STATES of America for the use and benefit of MPA CONSTRUCTION, INC.**

v.

**XL SPECIALTY INSURANCE CO.**

**No. CIV.A.DKC 2004–1681.**

United States District Court, D. Maryland.

Dec. 22, 2004.

Scott Brian Hillman, Shannon J. Briglia, Wickwire Gavin PC, Vienna, VA, for Plaintiff.

Sean Patrick Foley, Goldberg Pike and Besche PC, Baltimore, MD, Lawrence Michael Prosen, Bell Boyd and Lloyd PLLC, Washington, DC, for Defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution are the motions of Movant Jowett, Inc. ("Jowett") (1) for leave to intervene pursuant either to Fed.R.Civ.P. 24(a), or, alternatively, to Fed.R.Civ.P. 24(b)(2); and (2) to stay this litigation pending arbitration. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court grants both of petitioner's motions and directs Plaintiff MPA Construction, Inc. ("MPA")[1] and Movant to initiate arbitration.

## I. Background

The following facts are undisputed except where otherwise noted. On September 28, 2001, the federal government's National Institute for Health ("NIH") awarded a contract (the "prime contract") to Jowett, a general contractor, for construction of a fire station in Bethesda, Maryland. Because the prime contract was awarded for the construction of a federal building and exceeded $100,000 in value, Jowett was required by section 3131(b) of the Miller Act, 40 U.S.C. § 3131(b),[2] to furnish NIH with a pay-

---

1. Civil actions brought under the Miller Act must be brought "in the name of the United States for the use of the person bringing the action." 40 U.S.C. § 3133(b)(3)(A). The actual plaintiff in this case is therefore the United States of America, for the use and benefit of MPA. For convenience, the court refers to MPA as Plaintiff throughout.

2. 40 U.S.C. § 3131(b) states, in pertinent part:
Before any contract of more than $ 100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government the following bonds, which become binding when the contract is awarded: ...
   (2) Payment bond. A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person.

ment bond. Jowett obtained that payment bond from Defendant XL Specialty Insurance Co. ("XL"), an authorized payment bond surety.

On or about June 3, 2002, Jowett entered into a subcontract with MPA for drywall and ceiling work on the fire station project. Article 12 of that subcontract requires that "[a]ll disputes between the Contractor and Subcontractor, not involving the Owner's acts, omissions or responsibilities shall be resolved by arbitration in accordance with the rules of the American Arbitration Association." Paper no. 6, Exh. A, art. 12. In connection with the subcontract work, MPA submitted invoices to Jowett requesting payment of $179,608, but received from Jowett payments totaling only $133,968.50.

MPA contends it is owed the balance of $45,639.50 because it successfully completed its work on the project and because Jowett has received full payment from NIH for all the work MPA performed on the project. Jowett disputes MPA's contention that Jowett owes MPA the $45,639.50 balance. Jowett explains that on or about July 29, 2003, NIH terminated the prime contract. NIH did not state why the contract was terminated, but invited a "termination for convenience" settlement proposal, *see generally* 48 C.F.R. 49.000 *et seq*, which Jowett submitted on June 23, 2004. Jowett believes that allegedly defective work performed by MPA may be part or all of the reason for the termination. *See* paper no. 14, Exh 2, at 1. Jowett also asserts that it is still owed payment from NIH, and that included in that balance owed are monies owed to MPA. *See Id.* at 2. Jowett claims that if it ultimately recovers from NIH, "MPA would be reimbursed for that portion of work to which it is properly due on a *pro rata* basis." *Id.*

Having been refused payment by Jowett, MPA timely filed this complaint against XL pursuant to the Miller Act, which states that "every person that has furnished labor or material in carrying out work provided for" in a contract subject to the Act, when not paid in full for work within 90 days, "may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1).

Jowett now seeks to intervene, asserting that, "[s]hould this Court find that the surety is liable to MPA, the surety will in turn seek indemnification from Jowett for such judgment." Paper no. 6, at ¶ 2. Jowett also moves the court to stay this action pending arbitration between MPA and Jowett pursuant to the subcontract's mandatory arbitration clause. *See* paper no. 7.

## II. Motion to Intervene

Jowett moves the court (1) to grant intervention of right under Fed.R.Civ.P. 24(a)(2), or, alternatively, (2) to permit intervention under Fed.R.Civ.P. 24(b)(2).

Fed.R.Civ.P. 24(a) states, in pertinent part:

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

To establish the right to intervene in an action under Rule 24(a), an intervenor must (1) submit a timely motion; (2) demonstrate a "direct and substantial interest" in the property or transaction; (3)

prove that the interest would be impaired if the intervention was not allowed; and (4) establish that the interest is inadequately represented by existing parties. *First Penn–Pacific Life Ins. Co. v. William R. Evans, Chartered,* 200 F.R.D. 532, 536 (D.Md.2001) (citing *In re Richman,* 104 F.3d 654, 659 (4th Cir.1997)). A party moving for intervention under 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements. *In re Richman,* 104 F.3d at 658.

Jovett has moved timely to intervene and clearly has a "direct and substantial interest" in the transaction, because XL, if held liable, will turn to Jovett for indemnification. Whether Jovett's interests would be impaired and whether Jovett's interests are adequately represented by XL are closer questions.

Traditionally, it has been assumed that "in a suit brought by a subcontractor on the bond, the principal may intervene to assert any claim which he may have against the subcontractor and the United States." 20B Appleman, Insurance Law and Practice § 11804 (1980) (citing *United States ex rel. Foster Wheeler Corp. v. American Sur. Co.,* 25 F.Supp. 700 (E.D.N.Y.1938)). While the Fourth Circuit has not ruled on this question, courts in the Second and Fifth Circuits have held that a contractor which has agreed to indemnify its surety on a bond can intervene as a party defendant as of right in a suit on that bond against the surety. *See United States ex rel. Foster Wheeler Corp. v. American Sur. Co.,* 142 F.2d 726, 728 (2nd Cir.1944) (hereinafter *"Foster Wheeler 1944"*) (general contractor "was properly allowed to intervene in the suit" against payment bond because "[i]t would have been bound by a judgment against its surety entered after it had received due notice of the suit, and it was entitled to an opportunity to defend that action."); *Coleman Capital Corp. v. Fid. & Deposit Co.,* 43 F.R.D. 407, 408 (S.D.N.Y.1967) (motion of general contractor to intervene of right granted in suit against payment bond) (noting that "[a] general contractor may intervene as of right in a suit by a subcontractor against a surety on a performance bond.") (citing *Foster Wheeler 1944* ); *accord Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.,* 426 F.2d 709, 716 (5th Cir.1970) (general contractor has right of intervention as defendant against suit on performance bond).

The reasoning in these cases, however, is sparse; primarily, they appear to draw on *Washington Gaslight Co. v. District of Columbia,* 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712 (1896), where the Court approvingly quoted a New Hampshire state court:

> "When a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit, and requested to take upon him the defence of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim as if he were the real and nominal party upon the record. In every such case, if due notice is given to such person, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he has appeared or not."

*Id.* at 330, 16 S.Ct. 564 (quoting *Littleton v. Richardson,* 34 N.H. 179, 187 (N.H. 1856)). In short, these courts seem to have simply asserted that a principal may, *per se,* intervene of right.

Such a *per se* right, however, appears to conflict with Rule 24(a)(2). MPA asserts that Jovett's interests are neither impaired nor inadequately represented, thereby fail-

ing the third and fourth elements of the *First Penn–Pacific* test for satisfying Rule 24(a)(2). MPA argues that XL is (1) required to defend this case in good faith according to the law of surety agreements, and (2) has incentive to do so, because if it does not, Jowett will have grounds to refuse to indemnify. MPA thus contends that Jowett has not met its burden to show that XL's representation will be inadequate, citing *First Penn–Pacific*, where another court in this district recited the movant's burden:

> With respect to the [adequacy] requirement [of Rule 24(a)(2) ], the Fourth Circuit has indicated that an intervenor's burden of showing inadequacy of representation is "minimal." *Commonwealth of Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir.1976) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)). However, when the moving party has the same ultimate objective as a party to the suit, then a presumption arises that the moving party's interests are adequately represented. *Westinghouse Elec. Corp.*, 542 F.2d at 216. Indeed, when the existing party has a legal obligation to represent the interests of the intervenor, then the intervenor has the "onerous" burden of making a "compelling showing of inadequate representation." *See In re Richman*, 104 F.3d 654, 660 (4th Cir.1997) (quoting *In re Thompson*, 965 F.2d [1136, 1142 (1st Cir.1992) ]) (emphasis in original). To rebut the presumption of adequate representation, the moving party "must demonstrate adversity of interest, collusion, or nonfeasance." *Id.*; *see also Bragg v. Robertson*, 183 F.R.D. 494, 496 (S.D.W.Va.1998).

200 F.R.D. at 536–37. MPA contends that Jovett does, in fact, have "the same ultimate objective as" XL, *Id.*, and that XL "has a legal obligation to represent the interest of" Jovett, *Id.*, because of XL's good faith obligation as surety.

Jowett makes no effort to meet the burden identified in *First Penn–Pacific*, merely asserting instead that "while the surety's liability is coextensive and concurrent with that of its principal, 'the ultimate liability, however, is with the principal, not the surety.'" Paper no. 14, at 4 (citation and emphasis omitted). As recited in *First Penn–Pacific*, *supra*, however, where ultimate liability may lie is not, by itself, determinative of whether Movant should be granted intervention of right. Furthermore, Movant's assertion of ultimate liability is simply not necessarily true. First, surely, should XL be found liable, Jowett will challenge that finding in a separate action. Second, Jowett's "ultimate liability" does not disprove XL's good faith responsibility. It is true that "the surety may pay the money and proceed against the principal for indemnity," paper no. 14, at 4, but it does not follow that the surety will succeed in obtaining indemnification—especially if the principal can show that the surety did not adequately and in good faith defend in the present action.

■ This court, however, need not decide whether to contradict the holdings of the Second and Fifth Circuits, because the court will grant permissive intervention under Rule 24(b)(2), which states, in pertinent part:

> Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b)(2). Plainly, Jowett's claim and the main action have "ques-

tion[s] of law or fact in common," namely, whether MPA completed its work to the satisfaction of the contract, and whether MPA is owed money according to that contract. Courts in other circuits considering Rule 24(b)(2) permissive intervention under similar circumstances have held that, in the absence of undue delay, intervention is appropriate to promote judicial efficiency. *See Mahurins Constr. Co. v. Granite RE, Inc.*, 2004 WL 2249489, *1, 2004 U.S. Dist. LEXIS 20147, *3 (D.Kan. 2004) (permitting the general contractor to intervene "conforms with Rule 24's central goal of preventing a multiplicity of suits that involve common questions. If [general contractor] is not permitted to intervene and [subcontractor] prevails in this action, [surety] likely will seek reimbursement from [general contractor], who in turn likely will seek to recover against [subcontractor]."); *Penn Lyon Homes, Inc. v. Liberty Mut. Ins. Co.*, 2001 WL 789200 at *2–3, 2001 U.S. Dist. LEXIS 14400 (D.Conn. 2001), (same).

MPA argues chiefly in opposition that intervention by Jowett "will undoubtedly delay the litigation," and that "[a]s a small contractor, any further delay in receiving the monies claimed will create a hardship on MPA." Paper no. 12, at 8. The court finds this argument without merit. First, MPA fails to provide any substantiation to support its assertion of financial hardship. Second, it is a somewhat peculiar stance to assert that delay will cause financial hardship while simultaneously requesting that the court allow full-blown litigation to proceed instead of initiating arbitration. It is not clear to the court why MPA thinks the case will proceed any less quickly if Jowett is a party. As a general matter, one of the primary reasons why federal law favors arbitration is to resolve cases more quickly and efficiently. *See COMSAT Corp. v. Nat'l. Science Found.*, 190 F.3d 269, 276 (4th Cir.1999) (the "policy underpinnings

of arbitration [are] speed, efficiency, and reduction of litigation expenses") (quoting *Burton v. Bush*, 614 F.2d 389 (4th Cir. 1980)); *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023 (11th Cir. 1982) (stating that "[f]ederal law evinces a clear preference for arbitration over litigation for private dispute resolution" and "[a]rbitration provides a speedier and less costly method of dispute resolution than does litigation, while relieving congested federal court dockets"). Any potential for undue delay is likely to be mitigated, not exacerbated, by arbitration, which this court today orders. *See infra* at Part IV. MPA voices concerned that intervention will result in having to await resolution of the dispute between Jowett and NIH regarding termination of the prime contract, *see* paper no. 12, at 9, but that concern seems inapposite: If NIH terminated the prime contract for reasons relating to MPA's performance, that issue is going to be raised by whichever party defends this action, because, as noted by MPA, if XL is the defendant, it must litigate Jowett's defenses in good faith. The decision of either a court or an arbitrator to stay or not to stay proceedings pending resolution of that issue does not turn, therefore, on whether Jowett is a party to the case, so any potential undue delay due to such a stay is no more or less likely to occur if intervention is permitted.

For these reasons, Jowett's motion for leave to intervene pursuant to Fed. R.Civ.P. 24(b)(2) is GRANTED.

## III. Stay Pending Arbitration

The court is required to stay litigation pending arbitration under certain circumstances. Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, states, in pertinent part:

> If any suit or proceeding be brought in any of the courts of the United States

upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

Furthermore, when the issues before a district court are not "issue[s] referable to arbitration," *Id.*, the court, while not required to stay the litigation, has discretionary power to do so. *American Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 97 (4th Cir., 1996) ("[T]he decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket.") (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir.1992)). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. 927.

Jowett asks the court to stay MPA's action against XL pending arbitration between Jowett and MPA. A suit has been brought upon issues referable to arbitration—namely, whether MPA completed its work to the satisfaction of the contract, and whether MPA is owed money according to that contract.

Jowett, having been granted leave to intervene as a defendant, is clearly entitled to the stay: The dispute, now between MPA and both Jowett and XL, is undeniably subject to the subcontract's mandatory arbitration clause, paper no. 6, Ex. A, Article 12; as such, it necessarily contains "issue[s] referable to arbitration," 9 U.S.C. § 3. The Fourth Circuit has previously agreed, finding that, when a general contractor requests a stay of a Miller Act action by a subcontractor against both the general contractor and the surety, "[t]here can be no question that, under language of [9 U.S.C. § 3], defendants were entitled to the stay asked." *Agostini Bros. Bldg. Corp. v. United States*, 142 F.2d 854, 855 (4th Cir.1944); *see United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Co.*, 532 F.2d 1009, 1013 (5th Cir. 1976) (where subcontractor arbitrates against general contractor and litigates separately against surety pursuant to Miller Act, "the Federal Arbitration Act specifically provides for a stay").

Furthermore, even if the issues before this court were not "issue[s] referable to arbitration," the court would nonetheless grant a discretionary stay. In *American Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961 (4th Cir. 1980), the Fourth Circuit, considering a highly analogous situation, found that "all litigation should be stayed pending the arbitration proceedings. While it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action." *Id.* at 964. *See also Humbarger v. The Law Company, Inc.*, 2002 WL 436772 at *4, 2002 U.S. Dist. LEXIS 4702 at *11 (D.Kan. Feb. 20, 2002) (finding that "the fact that this court cannot require [surety] to participate in the arbitration is no reason not to stay the case" in part because "[i]n the event the arbitrators resolve the dispute in plaintiff's favor, plaintiff is adequately protected . . . by its Miller Act suit still pending in this court against the surety.").

MPA does not argue that the issues before this court are not "issue[s] referable to arbitration." MPA does argue, however, that it is not obligated to arbitrate its dispute with XL, and asks that "if Jowett is permitted to intervene, this Court should direct MPA and Jowett to proceed to arbitrate its [sic] disputes ... while allowing MPA's bond claim to continue in this Court without further delay." Paper no. 13, at 5. MPA fears that "even if successful [against Jowett in arbitration], MPA will be unable to collect a judgment from Jowett," and "XL will disclaim any liability[,] [sic] arguing that as a non-signatory to the arbitration agreement, XL is not bound by the decision of the arbitrator," leaving MPA "in the unenviable position of having to arbitrate its claims against Jowett and then litigate its claims against XL." *Id.* at 5, 6. This argument rests on the notion that the rationale for the Miller Act is to protect subcontractors. *See United States ex rel. Pensacola Constr. Co. v. St. Paul Fire and Marine Ins. Co.,* 705 F.Supp. 306, 308–09 (W.D.La. 1988) (citing *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 121–22, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974)). According to this rationale, a stay would, in the words of the *Pensacola* court, "subvert the rationale for the Miller Act" and "wreak damage on [the subcontractor]" but "not work a hardship on [the contractor]." 705 F.Supp. at 308–09. As another court noted, however, that rationale usually is not dispositive in situations such as this:

> While the *Pensacola* case is instructive, it ... ignores a long history of Miller Act cases which resolve the tension between the Miller Act and the Federal Arbitration Act by staying the Miller Act claim pending arbitration of the underlying dispute. *See, e.g., United States ex rel. Newton v. Neumann Caribbean Intern., Ltd.,* 750 F.2d 1422 (9th Cir.1985); *United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Corp.,* 532 F.2d 1009 (5th Cir.1976); *J.S. & H. Constr. Co. v. Richmond County Hosp. Auth.,* 473 F.2d 212 (5th Cir.1973); *Warren Bros. Co. v. Cardi Corp.,* 471 F.2d 1304 (1st Cir.1973); *United States ex rel. Capolino Sons v. Electronic & Missile Facilities, Inc.,* 364 F.2d 705 (2nd Cir.), *cert. dismissed,* 385 U.S. 924, 87 S.Ct. 239, 17 L.Ed.2d 148 (1966); *Agostini Bros. Bldg. Corp. v. United States ex rel. Virginia–Carolina Elec. Works, Inc.,* 142 F.2d 854 (4th Cir.1944); *United States ex rel. Delay & Daniels, Inc. v. American Employers Ins. Co. of Massachusetts,* 290 F.Supp. 139 (D.S.C.1968); *United States ex rel. Chicago Bridge & Iron Co. v. Ets–Hokin Corp.,* 284 F.Supp. 471 (N.D.Cal.1966), *aff'd,* 397 F.2d 935 (9th Cir.1968); *United States ex rel. Seaboard Surety Co., v. Electronic & Missile Facilities, Inc.,* 206 F.Supp. 790 (D.P.R.1962); *Loyal Order of Moose v. International Fidelity Ins. Co.,* 797 P.2d 622 (Alaska 1990).

*U.S. ex rel. Tanner v. Daco Constr., Inc.,* 38 F.Supp.2d 1299, 1304–05 (N.D.Okla. 1999). That court also opined that if

> the Court were to deny defendants' motion to stay, the arbitration mandate ... in the subcontract would be rendered meaningless, and, in every public works project where the subcontractor agrees to a similar clause, the subcontractor could circumvent the arbitration provision by suing the surety. It seems grossly inefficient to have the parties arbitrate and litigate at the same time or bear unnecessary expense and the risk of inconsistent results. While the parties to the subcontract could have made arbitration a condition precedent to an action under the Miller Act, *see United States ex rel Air–Con, Inc., v. Al–Con Development Corp.,* 271 F.2d

904 (4th Cir.1959), in the interests of judicial economy, it is more efficient for [contractor and subcontractor] to arbitrate the underlying dispute before requiring [the surety] to litigate the dispute in federal court.

*Id.* at 1306.

█ Furthermore, MPA's fear of delay is largely unfounded. First, as noted *supra* at 938, MPA has not made any showing of hardship. Second, the fear of delay is speculative, because MPA will have to prevail against Jowett in arbitration and then relitigate its claim against XL only if (1) Jowett does not pay MPA subsequent to a favorable determination from NIH, or (2) Jowett is unable or refuses to pay an arbitration award in favor of MPA. Third, it is true that XL is not bound by the subcontract's arbitration clause, and therefore cannot be required to arbitrate, but it does not follow that XL will not be bound by the results of arbitration between MPA and Jowett. Generally, "a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." *United States Postal Serv. v. Gregory,* 534 U.S. 1, 16, 122 S.Ct. 431, 151 L.Ed.2d 323 (2001) (Ginsburg, J., concurring) (quoting Restatement (Second) of Judgments § 84). In the case of Miller Act actions involving subcontractors, principals, and sureties, courts in other circuits have held that "a judgment against a principal conclusively establishes the liability of a surety, as long as the surety had notice of the proceedings against the principal." *United States ex rel. Skip Kirchdorfer, Inc. v. M.J. Kelley Corp.,* 995 F.2d 656, 661 (6th Cir.1993) (citing *Frederick v. United States,* 386 F.2d 481, 485 n. 6 (5th Cir.1967)); *see also United States ex rel. Aurora Painting, Inc. v. Fireman's Fund Ins. Co.,* 832 F.2d 1150, 1151 (9th Cir.1987) (surety is bound by arbitration decision even though it "was not a named party in ... the arbitration and made no appearances.") (citing *Frederick* ). XL plainly has notice of arbitration, because the court today directs it, and because, as in *Skip Kirchdorfer,* "[i]ndeed, they were named as defendants in the district court complaint filed immediately prior to the arbitration." *Skip Kirchdorfer,* 995 F.2d 656 at 661. The court in *Skip Kirchdorfer,* after citing precedent in other circuits, added that such a rule is favored by the law of privity:

> The district court's conclusion that [the sureties] are bound by the arbitration is bolstered by Ohio law, which governs the substantive legal issues in this case. Ohio courts have consistently held that a party can be bound by an adverse decision against another party with whom the first party is in privity. *See, e.g., City of Columbus v. Union Cemetery Ass'n,* 45 Ohio St.2d 47, 51, 341 N.E.2d 298 (1976); *Whitehead v. General Tel. Co.,* 20 Ohio St.2d 108, 114, 254 N.E.2d 10 (1969).

*Id.* The same is true in Maryland. *See Klugh v. United States,* 818 F.2d 294, 300 (4th Cir.1987) ("a nonparty to an action may be bound by a judgment under res judicata if one of the parties to the action is so closely aligned with the interests of the nonparty as to be his virtual representative."); *Ugast v. La Fontaine,* 189 Md. 227, 55 A.2d 705, 708 (1947) ("where persons, although not formal parties of record, have a direct interest in the suit, and ... are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties.") (citing *Parr v. State,* 71 Md. 220, 17 A. 1020 (1889)). In fact, in Maryland, this principle has long been applied to the relationship between principal and surety:

[R]ecovery against the principal in [a] bond, even though the sureties were no parties to the suit, is prima facie binding upon the sureties; ... they can only relieve themselves of such binding effect of the recovery against the principal, by showing that the amount recovered was in excess of the amount which the plaintiff in the judgment or decree was really entitled to recover, or that he was not entitled to recover at all.

*Parr*, 17 A. at 1022. Because any arbitration award in favor of MPA is likely to be enforceable against XL, prolonged litigation following any arbitration award for Plaintiff is unlikely.

For all these reasons, even were the issues before this court not "issue[s] referable to arbitration," 9 U.S.C. § 3, the court would exercise its discretion to stay this litigation pending the arbitration it today orders. Jowett's motion to stay is therefore GRANTED.

## IV.   Arbitration

The court notes that arbitration has not yet been initiated. The court therefore directs MPA and Jowett to initiate arbitration no later than January 14, 2005. A separate Order will follow.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 22nd day of December, 2004, by the United States District Court for the District of Maryland, ORDERED that:

1.   The motion of Movant Jowett, Inc., to intervene (paper no. 6), BE, and the same hereby IS, GRANTED;

2.   The motion of Movant to stay action pending arbitration (paper no. 7), BE, and the same hereby IS, GRANTED;

3.   This case BE, and the same hereby IS, STAYED pending completion of arbitration as ordered herein;

4.   Movant and Plaintiff United States for the use and benefit of MPA Construction, Inc. are directed to initiate arbitration proceedings no later than January 14, 2005;

5.   The clerk is directed to CLOSE this case administratively, subject to reopening on the request of any party upon conclusion of arbitration; and

6.   The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.